# In the United States Court of Federal Claims

No. 19-1407
(Filed Under Seal: June 12, 2024)
(Reissued: June 24, 2024)[1]

```
*************************************
KANDI ARNHOLD, et al.,              *
                                    *
                 Plaintiffs,        *
                                    *
         v.                         *
                                    *
THE UNITED STATES,                  *
                                    *
                 Defendant.         *
*************************************
```

## MEMORANDUM OPINION AND ORDER

The plaintiffs, Kandi Arnhold, *et al.*, bring a putative class action against the United States alleging violation of the Takings Clause of the Fifth Amendment and breach of contract, stemming from increased EA-18G Growler flight operations by the United States Navy at an air strip on Whidbey Island, Washington. Before the Court is the government's motion to compel physical and mental examinations of certain plaintiffs under Rule 37[2] and Rule 35 of the Rules of the United States Court of Federal Claims ("RCFC"). [ECF 85]. The motion is fully briefed, [ECFs 87, 88, 91], and oral argument was deemed unnecessary.

Rule 35 provides that "[t]he court may order a party whose mental or physical condition—including blood group—is in controversy to submit to a physical or mental examination by a suitably licensed or certified examiner." RCFC 35(a)(1). Such an order "may be made only on motion for good cause and on notice to all parties and the person to be examined; and [] must specify the time, place, manner, conditions, and scope of the examination, as well as the person or persons who will perform it." RCFC 35(a)(2)(A)-(B). Under Rule 35(a)

---

[1] Pursuant to the Protective Order entered on June 10, 2020, [ECF 16-1], the Court issued this Memorandum Opinion and Order under seal on June 12, 2024, and provided the parties fourteen days to propose redactions. *See* [ECF 95]. On June 24, 2024, the parties filed a Joint Status Report stating that they agreed that no information needed to be redacted. [ECF 98]. Accordingly, the Court reissues this Memorandum Opinion and Order without redactions.

[2] Rule 37 provides that "a party may move for an order compelling disclosure or discovery." RCFC 37(a)(1). It is "designed to encourage or secure compliance with the discovery rules, not to reward a party prevailing on a motion to compel." *Council for Tribal Emp. Rights v. United States*, 110 Fed. Cl. 244, 248 (2013) (citing 7 James Wm. Moore, et. al., *Moore's Federal Practice*, § 37.50[1][a] (3d ed. 2012)). "In acting on a motion to compel discovery, the court exercises broad discretion, guided by the court's rules." *New Orleans Reg'l Physician Hosp. Org., Inc. v. United States*, 122 Fed. Cl. 807, 820 (2015) (citing *Schism v. United States*, 316 F.3d 1259, 1300 (Fed. Cir. 2002)).

of the Federal Rules of Civil Procedure ("FRCP"),[3] the "in controversy" and "good cause" requirements "are not met by mere conclusory allegations of the pleadings—nor by mere relevance to the case—but require an affirmative showing by the movant that each condition as to which the examination is sought is really and genuinely in controversy and that good cause exists for ordering each particular examination." *Schlagenhauf v. Holder*, 379 U.S. 104, 118 (1964). "A plaintiff's mental or physical condition is 'in controversy' when the condition is the subject of the litigation." *Snipes v. United States*, 334 F.R.D. 667, 669 (N.D. Cal. 2020) (citing *Haqq v. Stanford Hosp. & Clinics*, 2007 WL 1593224, at *1 (N.D. Cal. June 1, 2007)). A relevant question for determining whether a condition is "in controversy" is "whether a plaintiff is making a claim for damages related to [the condition] that differs substantially from the typical claim in similar cases—that is, the question is whether the plaintiff's claim is a 'garden-variety' one." *See Winstead v. Lafayette Cnty. Bd. of Cnty. Comm'rs*, 315 F.R.D. 612, 615 (N.D. Fla. 2016) (citing *Turner v. Imperial Stores*, 161 F.R.D. 89, 97 (S.D. Cal. 1995)). "'Good cause' requires a showing that the examination could adduce specific facts relevant to the cause of action and necessary to the defendant's case." *Ornelas v. S. Tire Mart, LLC*, 292 F.R.D. 388, 391 (S.D. Tex. 2013) (citing *Ragge v. MCA/Universal Studios*, 165 F.R.D. 605, 609 (C.D. Cal. 1995)). "Relevant factors courts consider include the possibility of obtaining desired information by other means, whether plaintiff plans to prove her claim through testimony of expert witnesses, whether the desired materials are relevant, and whether plaintiff is claiming ongoing emotional distress." *Gavin v. Hilton Worldwide, Inc.*, 291 F.R.D. 161, 165 (N.D. Cal. 2013) (internal quotation marks omitted) (citing *Stanford Hosp. & Clinics*, 2007 WL 1593224, at *1). Whether to grant an examination is within the trial judge's discretion. *Real v. Hogan*, 828 F.2d 58, 64 (1st Cir. 1987).

The government moves to compel twelve of the eighteen bellwether plaintiffs to submit to mental and/or physical examinations under Rule 35. Def.'s Mot. to Compel [ECF 85] at 5-7. According to the government, these twelve plaintiffs have put their health in controversy by claiming—in the Third Amended Complaint and in discovery responses—that their health has worsened as a result of the Navy's increased flight operations on Whidbey Island.[4] *Id.*; *see also id.* at 10 ("Here, Plaintiffs claim the United States owes them just compensation because the alleged increase in overflights has destroyed their 'use and enjoyment' of their properties."); *id.* ("Plaintiffs apparently wish to support their claim of diminished 'use and enjoyment' of their properties with evidence of these physical and mental conditions."). The government argues that the Court has good cause for granting the examinations because whether an individual suffers from the types of health conditions alleged by the plaintiffs is beyond the ken of a lay person and also because the "Plaintiffs' allegations raise factual disputes concerning: (1) whether Plaintiffs have the conditions alleged; and (2) if they do, whether and to what extent the United States' actions caused or exacerbated those conditions." *Id.* at 11. The government further contends that "there are no reasonable alternatives to a Rule 35 examination," *id.* at 12, and that the plaintiffs

---

[3] RCFC 35(a) is identical to FRCP 35(a), except that whereas the former states that "[t]he court may" the latter states that "[t]he court where the action is pending may." *Compare* RCFC 35(a)(1), *with* FRCP 35(a)(1). The Court therefore references, where appropriate, caselaw interpreting FRCP 35(a).

[4] In a footnote in its motion to compel, the government notes that it "does not concede that the Court should consider mental or physical conditions in assessing whether a taking has occurred here or that such evidence would, if offered, b[e] relevant." [ECF 85] at 10 n.4.

have not, to date, provided the government with any medical reports or other documentation of their alleged health conditions, *id.*

The plaintiffs oppose the government's motion. Pls.' Opp. [ECF 87]. First, the plaintiffs argue that their health conditions are not in controversy: "The central focus in this case is on demonstrating harm to Plaintiffs' property interests—not harm to health. Plaintiffs seek no damages relating to anything other than their properties." *Id.* at 6. In the plaintiffs' view, "[t]hose allegations regarding [their] experiences and the impact of the Navy's flight activities on them are relevant only insofar as they bear on the value of Plaintiffs' properties, and the impact on their property values does not depend in any way on whether any particular property owner has a diagnosed mental or physical health condition." *Id.* at 7; *see also id.* at 9 ("The Complaint **does not** allege medically diagnosed psychiatric or physiological injuries, nor does it claim Plaintiffs are entitled to compensation under the Fifth Amendment for the mental or physical harm caused to them by the United States.") (emphasis in original); *id.* (stating that "Plaintiffs' Fifth Amendment taking claim only allows for Plaintiffs to recover for property loss") (internal quotation marks omitted); *id.* at 21 ("[T]he central issue in this Fifth Amendment takings case is the impact of the jet overflights on Plaintiffs' property rights—not their individual health status."). Next, the plaintiffs contend that the Court does not have good cause to order the examinations because "Plaintiffs will not offer expert witness testimony at trial to establish the existence or severity of any specific mental or physical conditions, and an average lay person can understand Plaintiffs' colloquial allegations of mental and physical distress without need for a medical examination." *Id.* at 7. The plaintiffs also suggest that the ordering of mental and/or physical examinations would "impose immense logistical burdens . . ., may cause unnecessary delays, and would increase costs," *id.* at 8, in addition to "caus[ing] undue stress, discomfort, and intrusion into Plaintiffs' personal lives," *id.*

In its reply, the government avers that the plaintiffs' alleged health conditions are either relevant to their Fifth Amendment takings claim—and thus properly the subject of discovery such as an RCFC 35 examination—or, as the plaintiffs acknowledge, they are irrelevant—and the Court should preclude the plaintiffs from testifying thereto. Def.'s Reply [ECF 88] at 2, 8. In their sur-reply, the plaintiffs object vociferously to the government's characterization of their position: "Plaintiffs never said physical and mental conditions are 'irrelevant.' Instead, Plaintiffs have explained that '**the central focus** in this case is on demonstrating harm to Plaintiffs' property interests—not harm to health,' and that Plaintiffs' takings claims do not depend on a particular '**diagnosed** mental or physical health condition.'" Pls.' Sur-reply [ECF 91] at 2 (emphasis in original).[5] The plaintiffs note, however, that they "intend to offer expert testimony regarding some of the effects of exposing humans to the levels of noise and vibrations that have resulted from the Navy's decision to quadruple Growler flight operations at OLF Coupeville." *Id.* at 3.

Generally, "[f]lights over private land are not a taking, unless they are so low and so frequent as to be a direct and immediate interference with the enjoyment and use of the land." *United States v. Causby*, 328 U.S. 256, 266 (1946). The measure of damages in such cases "is

---

[5] The plaintiffs also contend that the government's reply is a "veiled motion *in limine*." [ECF 91] at 2 (alteration in original).

3

the difference in the value of plaintiffs' properties before the taking by the United States . . . and their value after the full extent of the impairment of plaintiffs' use and enjoyment of them became apparent." *Aaron v. United States*, 311 F.2d 798, 802 (Ct. Cl. 1963). In an avigation easement case, evidence of a plaintiff's mental and physical condition may be relevant insofar as it demonstrates that the government's actions have interfered with his enjoyment and use of the land, thereby diminishing the value of his property. For example, in *Stephens v. United States*, the United States Claims Court noted the relevance of a plaintiff's mental and physical condition in an avigation easement case. 11 Cl. Ct. 352, 364 (1986). In *Stephens*, the court found that although the plaintiffs' expert persuasively linked "sustained levels of noise levels . . . to elevated levels of annoyance, emotional distress, and mental and bodily disorders," his testimony did "not advance the plaintiffs' case" because he failed to link the "physiological and psychological effects of sound directly to the plaintiffs" in order to "demonstrate that *their* use of the property [was] taken." *Id.* (emphasis in original).[6] In *Griggs v. Allegheny County, Pennsylvania*, the United States Supreme Court also noted, albeit indirectly, the relevance of the plaintiffs' health in an avigation easement case:

> Regular and almost continuous daily flights, often several minutes apart, have been made by a number of airlines directly over and very, very close to plaintiff's residence. During these flights it was often impossible for people in the house to converse or to talk on the telephone. The plaintiff and the members of his household (depending on the flight which in turn sometimes depended on the wind) were frequently unable to sleep even with ear plugs and sleeping pills; they would frequently be awakened by the flight and the noise of the planes; the windows of their home would frequently rattle and at times plaster fell down from the walls and ceilings; *their health was affected and impaired*, and they sometimes were compelled to sleep elsewhere.

369 U.S. 84, 87 (1962) (emphasis added).

      Here, it appears that the reason the plaintiffs seek to introduce evidence regarding the "garden variety mental and physical distress,"[7] [ECF 87] at 9, they suffered individually is to

---

[6] In *Stephens*, the court stated that "there was no evidence . . . linking the projected physiological and psychological effects of sound directly to the plaintiffs." 11 Cl. Ct. at 364. The court observed that the plaintiff's expert attempted "to predict what would happen if the land were commercially developed." *Id*. The Court stated that "[t]he fact that some future inhabitants of the land might be affected is of no import unless the plaintiffs can show that that phenomenon has the present effect of 'taking' the property." *Id*.

[7] For present purposes, whether the plaintiffs claim garden-variety injuries or whether they claim injuries that are beyond the ken of a lay person (or a combination of both) need not be determined. The Court notes, however, that certain plaintiffs allege Post Traumatic Stress Disorder ("PTSD"), *see, e.g.*, Third Am. Compl. [ECF 77] ¶ 51 (alleging that Jerold and Catherine Blair suffer from PTSD); *id.* ¶ 70 (alleging that Paul Firnstahl suffers from PTSD); [ECF 85] at 16 ("In her March 26, 2024 deposition, [Maryon] Attwood testified that the jets caused her to experience 'post-traumatic stress' symptoms."), a condition that certain courts have found *not* to be a garden-variety injury. *See Chadwell v. United States*, 2023 WL 6664986, at *3 (D. Kan. Oct. 12, 2023) (finding that plaintiff's claim of depression, anxiety, and PTSD "is not a garden-variety emotional distress claim" for purposes of a Rule 35

4

demonstrate the link between the Navy's overhead flight activities and the diminished value of their residential properties, *see id*. at 10. Thus, the issue for the Court is whether, in so doing, the plaintiffs have placed their mental and physical health "in controversy" as defined in Rule 35. The Court finds that they have not.[8] As noted above, in Fifth Amendment avigation easement cases, the measure of damages is the difference in the value of the plaintiffs' property before and after the taking. That may explain why neither the Court nor the parties have found "a single case in any jurisdiction permitting invasive Rule 35 medical examinations in a Fifth Amendment takings case," [ECF 87] at 17, let alone a Fifth Amendment avigation easement takings case. In any event, the plaintiffs do not seek compensation for any mental or physical injuries caused by the Navy's flight operations. [ECF 87] at 10. Instead, the plaintiffs seek compensation for an alleged taking of their real property due to the Navy's increased flight operations, which allegedly interfere with their use and enjoyment of their respective properties. *Id*. at 13. The subject matter of this litigation is the alleged disruption to the plaintiffs' use and enjoyment of their properties, not the plaintiffs' individual health conditions. The generic mental and physical distress allegedly experienced by the plaintiffs may be relevant for considering whether the Navy's activities interfere with the plaintiffs' use and enjoyment of their properties; however, such generic distress allegations in the context of a takings claim do not put the individual plaintiff's health "in controversy" under Rule 35. *See Winstead*, 315 F.R.D. at 615 (concluding that the alleged mental distresses were vague, were the type of distresses that normally accompany the underlying legal claim, were of the garden-variety and thus were not "in controversy").

Further, the government has not made a sufficient showing of good cause. For example, at least as to certain bellwether plaintiffs, the government has already propounded interrogatories. *See, e.g.*, [ECF 85] at 15-20 (noting that the government received interrogatory

---

examination); *Simpson v. Univ. of Colo.*, 220 F.R.D. 354, 362 (D. Colo. 2004) (finding that good cause existed for a Rule 35 examination because plaintiff alleged PTSD, "a specific psychiatric condition or injury, and intends to offer expert testimony to support that allegation"); *Eller v. Prince George's Cnty. Pub. Sch.*, 2019 WL 13108488, at *2 (D. Md. Oct. 18, 2019) (finding that good cause existed for a Rule 35 examination because plaintiff "claims emotional distress that is so severe, in fact, that she has sought professional treatment and has been diagnosed with at least one psychiatric injury, PTSD").

[8] There does not appear to be any consensus among the courts as to when a plaintiff places his mental and/or physical condition "in controversy" under FRCP 35. *See Turner*, 161 F.R.D. at 92 (collecting cases); *see also* 198 Am. Jur. Proof of Facts 3d 199 (2022) (surveying the requirements of FRCP 35 and similar state statutes). However, a mental examination appears to be appropriate under FRCP 35 where the plaintiff asserts a claim of emotional distress, and the case involves the following:

> 1) a cause of action for intentional or negligent infliction of emotional distress; 2) an allegation of a specific mental or psychiatric injury or disorder; 3) a claim of unusually severe emotional distress; 4) plaintiff's offer of expert testimony to support a claim of emotional distress; and/or 5) plaintiff's concession that his or her mental condition is 'in controversy' within the meaning of Rule 35(a).

*Kuminka v. Atl. Cnty. N.J.*, 551 F. App'x 27, 29 (3d Cir. 2014) (quoting *Turner*, 161 F.R.D. at 95).

5

responses from Mrs. Borton, Ms. Horeth, and Mr. Kingston).[9] Additionally, the government has already deposed and requested the production of documents from certain bellwether plaintiffs. *See, e.g.*, *id.* at 16, 22 (noting that the government deposed Ms. Attwood and Mr. Hull); *id.* at 12 (noting that in the government's Request for Production No. 23, the government "sought medical records associated with diagnosis and/or treatment of a condition from Plaintiffs who have 'identified any physical or mental condition in response to Interrogatory No. 20,'" which asked whether the plaintiffs experienced any mental and/or physical injuries following the increased overflights). However, the government does not explain why interrogatories, depositions, and requests for production of documents are insufficient for the purpose of obtaining information with which to challenge the plaintiffs' claims.[10] At most, the government broadly asserts that "[w]ithout the information that can be learned only through the proposed examination, the United States will be unduly prejudiced by Plaintiffs' testimony about health impacts." [ECF 88] at 8. This broad assertion is unpersuasive. Given the nature of the alleged distresses and their relevance to the subject matter of this litigation, the government should be able to gather adequate information to challenge the relationship between the alleged distresses stemming from the Navy's overflight activities and the impact on the plaintiffs' use and enjoyment of their properties through other discovery means. *See Winstead*, 315 F.R.D. at 616-17. Additionally, although the plaintiffs state that they intend to offer an "expert to testify to the harmful effects of noise pollution at large," [ECF 87] at 18, they also state that they "have not retained any medical expert to testify about [p]laintiffs['] mental or physical conditions or to provide a clinical diagnoses as to the existence of medical conditions caused by the jets," *id.*, and that they do not "intend to offer other specialized medical evidence at trial to prove a psychiatric or physiological injury," *id.* at 18-19. This also weighs against a finding of good cause.

In sum, the government has neither demonstrated that, as to twelve of the eighteen bellwether plaintiffs, their mental and/or physical conditions are in controversy, nor has it made a sufficient showing of good cause. Accordingly, the government's motion to compel a Rule 35 examination as to these plaintiffs [ECF 85] is **DENIED**.

Some information contained in this Order may be considered protected information subject to the Protective Order entered on June 10, 2020, [ECF 16-1]. Accordingly, the Order is filed **UNDER SEAL**. The parties **SHALL CONFER AND FILE**, on or before **June 26, 2024**, a joint status report that (i) identifies the information, if any, that the parties contend should be

---

[9] The government identifies the bellwether plaintiffs as: (1) Janet Gardner, (2) Don and Sheryl Sato, (3) Steven and Harriet Borton, (4) Janet Buttenwieser and Matt Wiley, (5) Maryon Attwood and Robbie Lobell, (6) Sarah-Lyn Clark and James Nagel, (7) Heide Horeth and Jerome Squire, (8) Carlene Carl, (9) Terry C. Heaton, (10) John and Victoria Kingston, (11) Jenean Boggs, (12) Kurt and Jacqueline Blankenship, (13) Paul Firnstahl and Teresa Ligtenberg, (14) Monte and Janet Hull, (15) Mary and Philip Juetten, (16) Michael King and Marge Plecki, (17) Greg and Doreen Lucas, and (18) Andrea Scherencel. [ECF 85] at 6 n.1. The government notes, however, that "Plaintiffs' counsel have since indicated that Don and Sheryl Sato no longer intend to pursue their claims against the United States," and that "[t]he Parties have also agreed that Terry C. Heaton will no longer serve as a bellwether claimant." *Id.*

[10] In its motion to compel, the government states that the plaintiffs have not produced "*any* responsive documents to Request for Production No. 23." [ECF 85] at 12 (emphasis in original). This fact alone, however, does not support the government's motion to compel an examination under RCFC 35—the government, of course, always has the option of moving to compel responses to its discovery requests.

redacted, (ii) explains the basis for each proposed redaction, and (iii) includes an attachment of the proposed redactions for this Memorandum Opinion and Order.

    **IT IS SO ORDERED.**

s/ Thompson M. Dietz
THOMPSON M. DIETZ, Judge
